**IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **ROBERT STEINBACHER and** | : | |
| **MICHELLE STEINBACHER,** | : | |
| **Plaintiffs** | : | **No. 1:10-cv-2322** |
| | : | |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **DIVERSIFIED MAINTENANCE** | : | |
| **SYSTEMS, INC.,** | : | |
| **Defendant** | : | |

## <u>MEMORANDUM</u>

Before the Court is Defendant Diversified Maintenance Systems, Inc.'s motion for summary judgment. (Doc. No. 26.) The matter is ripe for disposition, and, for the reasons stated more fully herein, the Court will deny the motion.

## I.    BACKGROUND

On November 9, 2010, Plaintiffs Robert Steinbacher and Michelle Steinbacher initiated this action by filing a complaint sounding in negligence and loss of consortium against Defendant Diversified Maintenance Systems, Inc. (Doc. No. 1.) The dispute in this case concerns an injury that Mr. Steinbacher suffered at his workplace, the premises of which were cleaned and maintained by Defendant. The following facts of record are undisputed, unless otherwise noted.

On December 17, 2008, Mr. Steinbacher was acting within the course and scope of his employment for United Parcel Service (UPS) at the UPS facility in Harrisburg, PA, when he stepped into an open drainage grate and fell, resulting in injuries. (Doc. Nos. 26-1, 28 ¶¶ 2-3.) Just prior to the fall, Mr. Steinbacher was moving an empty trailer away from the UPS building

so that another full trailer could be unloaded.  (Id. ¶ 6.)

At the time of the fall, Defendant had a contract with UPS to provide certain cleaning and maintenance services at the UPS facility in Harrisburg.  (Doc. Nos. 26-1, 28 ¶ 11.)  Pursuant to the contract, entitled "Master Housekeeping Services Agreement," Defendant agreed to perform those services described in an individual work order from UPS.  (Id. ¶¶ 12, 15.)  The work order relevant to the instant matter required Defendant to perform spot sweeping and litter vacuuming in the area within fifty feet from the UPS building perimeter near the loading doors, which included the area in which Mr. Steinbacher's fall occurred.  (Id. ¶ 19.)

The Master Housekeeping Services Agreement also sets forth certain "special tasks" that Defendant was to perform periodically "when requested in writing by an authorized UPS representative."  (Id. ¶ 21.)  Among the special tasks listed in the applicable work order were vacuuming the drain grates, and cleaning the floor drains.  (Id. ¶¶ 23-25.)  Tom Leblanc, the plant engineering manager at the UPS facility in Harrisburg, testified in his deposition that drain trench cleaning was a periodic task, performed either at his direction or that of Matt Whitmer, another UPS employee.  (Id. ¶¶ 26-28.)  While the Master Housekeeping Services Agreement did not authorize Defendants to clean the drains without direction from UPS, the contract required Defendant to "properly guard the Services and areas affected by its Services to prevent any person or persons from being injured by its Services or by the condition of the facility."  (Id.; Doc. No. 26-4 ¶ 6.b.)

Mr. Leblanc testified that he has observed the trench drains overflowing, and other UPS employees testified that they have observed the trench grates becoming dislodged when an excess accumulation of trash was present in the trench coupled with rainfall.  (Doc. Nos. 26-1,

28 ¶ 32.)  Mr. Leblanc also testified that the grates located near the unloading docks sometimes

needed to be replaced if they were damaged or rusted, and that the grates would be replaced by

either UPS employees or outside contractors.  (Id. ¶¶ 36-37.)  The last time that Defendant

cleared the trench drains prior to Mr. Steinbacher's fall was on February 28, 2008.  (Id. ¶ 39.)

Plaintiffs provided an expert report on liability by David Fleisher, in which he opined

that: (1) the trench drains should have been cleaned of debris; (2) the grate was displaced due to

a buildup of debris that Defendant should have seen and reported to UPS; and (3) the failure to

maintain a clean trench drain caused a violation of the International Property Maintenance

Code.[1]  (Id. ¶¶ 42-43; Doc. No. 26-13 at 12.)

On July 20, 2012, following discovery, Defendant filed the instant motion for summary

judgment.  (Doc. No. 26.)

## II.    STANDARD OF REVIEW

Rule 56(a) of the Federal Rules of Civil Procedure provides that summary judgment is

warranted "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  A factual dispute is

material if it might affect the outcome of the suit under the applicable law, and it is genuine only

if there is a sufficient evidentiary basis that would allow a reasonable fact finder to return a

verdict for the non-moving party.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248-49

---

[1] Defendant argues that Plaintiffs' expert's report violates Rule 702 of the Federal Rules of Evidence because the opinions are not supported by the facts.  Specifically, Defendant argues that it was not responsible for cleaning out the drainage trenches under the contract with UPS. (Doc. No. 27 at 20.)  For purposes of ruling on the instant motion, the Court will disregard the opinions that Defendant has challenged.  However, the Court will consider the unchallenged portions of the report, which includes opinions as to how the drainage grate became dislodged.

(1986).  At summary judgment, the inquiry is whether the evidence presents a sufficient

disagreement to require submission to the jury or whether it is so one-sided that one party must

prevail as a matter of law.  Id. at 251-52.  In making this determination, the Court must "consider

all evidence in the light most favorable to the party opposing the motion."  A.W. v. Jersey City

Pub. Sch., 486 F.3d 791, 794 (3d Cir. 2007).

 The moving party has the initial burden of identifying evidence that it believes shows an

absence of a genuine issue of material fact.  Conoshenti v. Pub. Serv. Elec. & Gas Co., 364 F.3d

135, 145-46 (3d Cir. 2004).  Once the moving party has shown that there is an absence of

evidence to support the non-moving party's claims, "the non-moving party must rebut the

motion with facts in the record and cannot rest solely on assertions made in the pleadings, legal

memoranda, or oral argument."  Berckeley Inv. Grp.. Ltd. v. Colkitt, 455 F.3d 195, 201 (3d Cir.

2006); accord Celotex Corp. v. Catrett, 477 U.S. 317, 324 (1986).  If the non-moving party "fails

to make a showing sufficient to establish the existence of an element essential to that party's

case, and on which that party will bear the burden at trial," summary judgment is warranted.

Celotex, 477 U.S. at 322.

 With respect to the sufficiency of the evidence that the non-moving party must provide, a

court should grant summary judgment where the non-movant's evidence is merely colorable,

conclusory, or speculative.  Anderson, 477 U.S. at 249-50.  There must be more than a scintilla

of evidence supporting the non-moving party and more than some metaphysical doubt as to the

material facts.  Id. at 252; see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S.

574, 586 (1986).  Further, a party may not defeat a motion for summary judgment with evidence

that would not be admissible at trial.  Pamintuan v. Nanticoke Mem'l Hosp., 192 F.3d 378, 387

(3d Cir. 1999).

## III.   DISCUSSION

Defendant moves for summary judgment, arguing that there is no genuine issue of material fact, and that it is entitled to judgment as a matter of law.  (Doc. No. 26.)  Specifically, Defendant argues that the gist of the action doctrine bars Plaintiffs' negligence claim and that Plaintiffs have failed to establish a <u>prima facie</u> case of negligence.  (Doc. No. 27.)  In response, Plaintiffs argue that the gist of the action doctrine does not apply and that material questions of fact remain that must be submitted to a jury.  (Doc. No. 29.)

### A.   Gist of the Action Doctrine

First, Defendant argues that Plaintiffs' negligence claim should be dismissed based on the gist of the action doctrine.  (Doc. No. 27 at 13.)  Pennsylvania law precludes a plaintiff from bringing tort claims where the complained-of injury arises out of the defendant's failure to fulfill its contractual obligations unless "the [tort] wrong ascribed to the defendant [is] the gist of the action with the contract being collateral."  <u>Phico Ins. Co. v. Presbyterian Med. Servs. Corp.</u>, 663 A.2d 753, 757 (Pa. Super. Ct. 1995); <u>see also</u> <u>Pittsburgh Constr. Co. v. Griffith</u>, 834 A.2d 572, 581 (Pa. Super. Ct. 2003) ("[A] claim should be limited to a contract claim when the parties' obligations are defined by the terms of the contracts, and not by the larger social policies embodied by the law of torts."); <u>eToll, Inc. v. Elias/Savion Adver., Inc.</u>, 811 A.2d 10, 14 (Pa. Super. Ct. 2002) ("[T]he [gist of the action] doctrine is designed to maintain the conceptual distinction between breach of contract claims and tort claims[, and] . . . [a]s a practical matter, the doctrine precludes plaintiffs from re-casting ordinary breach of contract claims into tort claims.").

5

The difference between civil actions for tort and breach of contract is in the nature of the

interest protected.  See Christine M. Gimeno, Distinction from Contract Law, 1 Summ. Pa. Jur.

2d Torts § 1:4 (2d ed. 2012).

> Tort law protects a plaintiff's interest in being free from unreasonable
> risks of injury by imposing on a defendant, as a matter of law, a duty
> to perform to a certain standard of conduct; if an injury occurs, tort
> law attempts to place an injured party in the same position he or she
> occupied before the injury.  Protection under contract law, on the
> other hand, is limited to those individuals specifically named in a
> contract and the enforcement thereof is based on the manifestation of
> intent between the parties.  If a breach occurs, contract law seeks to
> give to the nonbreaching party the benefit of his or her bargain in
> order to put him or her in the position he or she would have been in
> had there been no breach.

Id.  Whereas breach of contract actions arise from breaches of duties imposed by contract, tort

actions arise from breaches of duties imposed by law as a matter of social policy.  eToll, 811

A.2d at 14.

Defendant asserts that its obligations to Mr. Steinbacher arise solely out of its contract

with UPS, and that the Master Housekeeping Services Agreement cannot be viewed as collateral

to Plaintiffs' negligence claim.  However, while Defendant's duties to UPS – rather than

Plaintiffs –  arise out of a contract, the Court finds that Plaintiffs' negligence claim arises out of

social policies that extend beyond the scope of duties set forth in the contract.  Plaintiffs'

negligence claim is not an ordinary breach of contract claim; in fact, Mr. Steinbacher was not a

party to a contract with Defendant.  Rather, the gravamen of Plaintiffs' action is that Defendant

breached a duty to maintain the UPS facility in Harrisburg in such a way as to avoid injury to

third parties.

"It has long been the law of this Commonwealth that a contracting party may owe a duty,

imposed by law and society, to perform its contractual obligations in such a manner as to avoid

injury to third parties . . . ."  Farabaugh v. Pa. Turnpike Comm'n, 911 A.2d 1264 (Pa. 2006)

(citing Restatment (Second) of Torts § 324A).  In such an instance, "[i]t is not the contract per se

which creates the duty; it is the law which imposes the duty because of the nature of the

undertaking in the contract."  Evans v. Otis Elevator Co., 168 A.2d 573, 575 (Pa. 1961).

Furthermore, Pennsylvania courts have adopted Section 383 of the Second Restatement of Torts,

which provides that "[o]ne who does an act or carries on an activity upon land on behalf of the

possessor is subject to the same liability . . . for physical harm caused thereby to others upon and

outside of the land as though he were the possessor of the land."  Restatement (Second) of Torts

§ 383; Felger v. Duquesne Light Co., 273 A.2d 738, 741-42 (Pa. 1971) (adopting Section 383).

    Here, Defendant undertook cleaning and maintenance duties at the UPS facilities,

including spot sweeping and litter removal in the area in which Mr. Steinbacher fell.  While

Defendant had a contractual duty to carry out the Master Housekeeping Services Agreement, it

also had a duty rooted in tort law to carry out its maintenance and cleaning duties in such a way

as to avoid injury to third parties such as Mr. Steinbacher.  The "gist" of Plaintiffs' action is that

Defendant was negligent in failing to prevent injury to people such as Mr. Steinbacher on the

UPS premises that it maintained and cleaned and that Mr. Steinbacher was injured as a result.

Thus, the Court declines to enter summary judgment based on the gist of the action doctrine.

### B.    **Prima Facie** Case of Negligence

    Second, Defendant argues that Plaintiffs have failed to establish a prima facie case of

negligence.  (Doc. No. 27 at 15.)  To establish liability for negligence, a plaintiff must establish:

(1) a duty recognized by law requiring the actor to conform to a certain standard of conduct; (2)

failure by the actor to observe this standard; (3) causation between the conduct and injury; and (4) actual damages.  Tomko v. Marks, 602 A.2d 890, 892 (Pa. Super. Ct. 1992).  Defendant argues that Plaintiffs cannot establish that it owed Mr. Steinbacher a duty, that it breached any duty, or that it caused any of his alleged injuries.

### 1.  Duty

First, referring to the Master Housekeeping Services Agreement, Defendant argues that it had no duty to clean the trench drains unless requested to do so by UPS, in writing.  The duty that a defendant owes to a plaintiff depends on the relationship between the parties, and even when there is no special relationship between the parties, the law imposes a duty on all people to not place others at a reasonably foreseeable risk of harm.  Alumni Ass'n, Delta Zeta Zeta of Lamdi Chi Alpha Fraternity v. Sullivan, 535 A.2d 1095, 1098 (Pa. Super. Ct. 1987).  "Only when the question of foreseeability is undeniably clear may a court rule as a matter of law that a particular defendant did not have a duty to a particular plaintiff."  Id. (citing Migyanko v. Thistlewaite, 419 A.2d 12, 14 (Pa. Super. Ct. 1980); Palsgraf v. Long Island R.R. Co., 162 N.E. 99, 100 (N.Y. 1928)).

Here, Defendant was hired by UPS to conduct maintenance and cleaning services at the UPS facility in Harrisburg.  Pursuant to the terms of the Master Housekeeping Services Agreement, Defendant was required to "properly guard the Services and the areas affected by its Services to prevent any person or persons from being injured by its Services or by the condition of the facility."  (Doc. No. 26-4 ¶ 6.b.)  Thus, Defendant had a duty to clean and maintain the premises so as to avoid injuring third persons.  Defendant had a duty "imposed by law and society, to perform its contractual obligations in such a manner as to avoid injury to third

parties" such as Mr. Steinbacher.  <u>Farabaugh</u>, 911 A.2d at 1283.  Therefore, the Court declines to

hold that Defendant did not owe Mr. Steinbacher a duty as a matter of law.

### 2.    Breach of Duty

Next, Defendant argues that it did not breach any of its duties because it was not

responsible for cleaning the trench drain or informing UPS of the buildup of debris in the drain.

Specifically, Defendant argues that it was not asked to vacuum the grates or clean the drains, and

the Master Housekeeping Services Agreement did not require it to be proactive in requesting

authority to clean out the trench drains.  (Doc. No. 27 at 18.)  However, as explained above,

Defendant had a duty to carry out its contract so as to prevent people from being injured by the

condition of the UPS premises that it maintained and cleaned.  The Master Housekeeping

Services Agreement imposed on Defendant a duty to guard and maintain the premises "to

prevent any person or persons from being injured by . . . the condition of the facility."  (Doc. No.

26-4 ¶ 6.b.)  This duty closely resembles the common law duty imposed on possessors of land to

protect invitees such as Mr. Steinbacher from foreseeable harm to the extent that it "knows or by

the exercise of reasonable care would discover the condition, and should realize that it involves

an unreasonable risk of harm to such invitee."  Restatement (Second) of Torts § 343; <u>see also</u> <u>id.</u>

§ 383 (imposing the same liability as possessor of land on those who act on behalf of possessors

of land).

Plaintiff has presented sufficient facts to support a finding that Defendant should have

known of a dangerous buildup of debris in the drain trenches yet failed to report the same.

Plaintiff has provided photographic evidence that the drainage trenches near the loading dock

where he fell were filled with trash, debris and Styrofoam packing peanuts the evening of the fall

and days later.  (Doc. No. 28-1.)  Such evidence may support a jury finding that the trenches were filled with debris at the time of and before the fall.  Todd Anderson, a manager for Defendant testified that he would expect his employees to use common sense to bring an accumulation of debris in a trench drain to UPS's attention.  (Doc. No. 28-6 at 3.)  However, Plaintiffs' expert cited deposition testimony from Antonio Guerrero, a cleaning worker for Defendant at the time of the incident, that the trench drain grates were "always full" with garbage but that Defendant's employees did not inform UPS of these conditions.  (Doc. No. 26-13 at 8.)  Thus, the record would support a finding that Defendant knew of a buildup of trash and debris in the drains before Mr. Steinbacher's fall.  The record also contains testimony that UPS employees have reported drainage grates being lifted up during heavy rains due to a buildup of debris in the grate.  (Doc. No. 26-11 at 65.)  Such testimony would support a finding that Defendant, as the company charged with clearing trash and debris from the area around the drainage grates, should have realized that a buildup of debris in the drains posed an unreasonable risk of harm to UPS employees such as Mr. Steinbacher on the premises.  Moreover, the record reflects that Defendant did nothing to remedy the dangerous condition, such as informing a UPS representative of the condition.  Viewing the record in the light most favorable to Plaintiffs, a triable issue of fact exists as to whether Defendant breached its duty of care.  Accordingly, the Court declines to grant summary judgment on this element of Plaintiffs' prima facie case for negligence.

### 3.      Causation

Next, Defendant argues that the Court should grant summary judgment in its favor because Plaintiff cannot prove causation.  (Doc. No. 27 at 18.)  In support of its argument,

Defendant asserts that Mr. Steinbacher "has no idea where he was located when the incident occurred" and that "there is no evidence as to how long the grate had been displaced prior to [Mr. Steinbacher's] accident."  (Id. at 19.)  Defendant also argues that Plaintiff has presented no evidence as to how or why the grate was displaced.  (Id.)

The mere occurrence of an injury does not establish negligence in every case; rather, "even when it is established that the defendant breached some duty of care owed the plaintiff, it is incumbent on a plaintiff to establish a causal connection between defendant's conduct and the plaintiff's injury."  Hamil v. Bashline, A.2d 1280, 1284 (Pa. 1978).  Whether a plaintiff has established causation by a preponderance of the evidence is normally a question for the jury, and "the question is to be removed from the jury's consideration only where it is clear that reasonable minds could not differ on the issue."  Id. at 1285 (citing Topelski v. Universal S. Side Autos, Inc., 180 A.2d 414 (1962)).  While "[n]egligent acts of commission are usually proved by direct evidence, . . . [n]egligent acts of omission are usually proved by circumstantial evidence."  Pope v. Reading Co., 156 A. 106, 108 (Pa. 1931).  The law does not "require the elimination of every possible cause of [an] accident other than that on which the plaintiff relies, or of all the causes which the ingenuity of counsel may suggest, but only of such other causes, if any, as are fairly suggested by the evidence."  Stauffer v. Ry. Exp. Agency, 47 A.2d 817, 818 (Pa. 1946) (citations omitted).

Here, Mr. Steinbacher has testified that he fell into an open drainage trench near an unloading dock at the UPS facility in Harrisburg.  (Doc. No. 26-4 at 26.)  Plaintiffs seek to prove that the grate that should have covered the drain was dislodged due to an unreasonable accumulation of trash and debris in the drain coupled with a significant flow of water and snow

in the drain.  While the grate could have been dislodged for a multitude of reasons, Plaintiffs need not eliminate every single possible cause for the dangerous condition.  In Tom Leblanc's deposition, he presented two scenarios where he had heard of drainage grates becoming dislodged: (1) vehicles hitting the grate in such a way as to cause the grate to shift and ultimately fall down into the drain; and (2) a heavy flow of water in the drain causing debris to lift the grate.  (Doc. No. 26-11 at 64-65.)  While Mr. Leblanc stated that the second scenario was "hard to believe," he noted that UPS employees had reported debris lifting the grate in the event of heavy rain.  (Id.)  Moreover, Plaintiffs have presented testimonial evidence from witnesses that have seen the drainage grates being lifted up during a heavy rain.  (Doc. Nos. 28-4, 28-5.)  However, the record contains no testimony from witnesses that have actually seen the drainage grates falling into the drains because of a vehicle.

Further supporting Plaintiffs' theory, the record consists of photographs of the trench drains near the loading docks at UPS facility the night of the accident and two days later showing an accumulation of trash, debris and Styrofoam shipping peanuts in the drains.  (Doc. No. 28-1.)  Plaintiffs' expert also referenced climatological data from the Harrisburg International Airport that would support a finding that snow and ice melted on the day of the accident and that precipitation occurred on that day in the Harrisburg area.  (Doc. No. 26-13 at 3.)  While this circumstantial evidence is not conclusive, it is sufficient to allow a reasonable jury to conclude that accumulation of debris and trash in the drainage trenches more likely than not caused the drainage grate to become dislodged, which caused Mr. Steinbacher to fall and injure himself.  Thus, the Court finds that Plaintiffs have presented sufficient evidence to allow a reasonable jury to find that Mr. Steinbacher's injuries resulted from Defendant's failure to

exercise due care in carrying out its maintenance duties at the UPS facility.

**IV.     CONCLUSION**

Defendant has failed to establish that it is entitled to summary judgment.  The facts of record would support a verdict for Plaintiffs.  Thus, the Court will deny Defendant's motion.  An order consistent with this memorandum will follow.

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| **ROBERT STEINBACHER and** | : | |
| **MICHELLE STEINBACHER,** | : | |
|     **Plaintiffs** | : | **No. 1:10-cv-2322** |
| | : | |
| **v.** | : | |
| | : | **(Chief Judge Kane)** |
| **DIVERSIFIED MAINTENANCE** | : | |
| **SYSTEMS, INC.,** | : | |
|     **Defendant** | : | |

## ORDER

**AND NOW**, on this 20th day of November 2012, for the reasons set forth in the accompanying memorandum, **IT IS HEREBY ORDERED THAT** Defendant's motion for summary judgment (Doc. No. 26) is **DENIED**.

S/ Yvette Kane
Chief Judge Yvette Kane
United States District Court
Middle District of Pennsylvania